Feliks ZYGOWSKI, Plaintiff,

v.

ERIE MORNING TELEGRAM, INC., d/b/a Journal Publishing Co., Defendant.

Civ. A. No. 600–Erie.

United States District Court
W. D. Pennsylvania.

Nov. 29, 1960.

William W. Knox, Erie, Pa., for plaintiff.

Bernard F. Quinn, Erie, Pa., for defendant.

WILLSON, District Judge.

In this non-jury case plaintiff sued defendant, a corporation, to recover unpaid compensation and overtime compensation claimed to be due him under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. as amended. Plaintiff lays jurisdiction under Section 16 of the statute, 29 U.S.C.A. § 216. Defendant in its answer raised the defense that it was not engaged in interstate commerce and therefore was not subject to the provisions of the act. However this position was later abandoned and defendant now concedes that it was subject to the act during the years 1956, 1957 and 1958. Plaintiff claims in his complaint the sum of $19,782, and in addition seeks reasonable counsel fees. Although plaintiff claims to have been engaged in work for the defendant over a longer period, he is confronted with the two year statute of limitations, so that the time involved here is for the period

from April 29, 1956 until his discharge on April 11, 1958, suit having been brought on April 29, 1958.

The evidence was taken but not transcribed. The court's findings are based upon the requests made by counsel and the court's recollection of the evidence. Counsel have been heard at oral argument and briefs have been filed and duly considered.

From the evidence the court makes the following:

### Findings of Fact.

1. Plaintiff, Felix Zygowski, is an individual and resident of the City of Erie, Erie County, Pennsylvania.

2. Defendant, Erie Morning Telegram, Inc., is a Pennsylvania Corporation with its principal office and printing plant in the City of Erie, Erie County, Pennsylvania.

3. At all times hereinafter mentioned defendant was engaged in the printing and publishing business in Erie, Pennsylvania and a substantial portion of its production of goods was destined for and did pass in interstate commerce.

4. Prior to 1953, the defendant corporation was owned by Joseph Wojciechowski, husband of Isabelle Wojciechowski.

5. Upon his death Isabelle Wojciechowski became the sole owner of all the corporation stock and continued the operation of the business.

6. Plaintiff, a native of Poland, had worked for a bank in Poland as a bookkeeper, had taken accounting courses in England, and had worked as a bookkeeper for the United States Army in England, and was generally familiar with accounting procedures.

7. That Isabelle Wojciechowski was ignorant of accounting procedures.

8. That about January 1, 1953, the plaintiff was employed as a bookkeeper by the corporation.

9. On or about May 1, 1954, the plaintiff married Isabelle Wojciechowski, president and sole owner of the defendant corporation.

10. That on or about May 1, 1954, Isabelle Zygowski called a meeting of all the employees, some five in number, and advised them that the plaintiff was the boss and would run the company, and that they should take orders from the plaintiff. From then on as the occasion required plaintiff hired and discharged employees, and kept all the books, and gave all the orders.

11. That Isabelle Zygowski instructed the plaintiff that he was entitled to hire additional help, if necessary.

12. Plaintiff interviewed customers, supervised the design and lay-out work they desired; plaintiff opened the mail, took in checks and receipts, answered the phone, and was in general charge of the business.

13. Plaintiff interviewed salesmen, and purchased the items necessary in the daily conduct of business.

14. Plaintiff figured the time of the employees, made out the payroll, and drew the checks by which the employees were paid.

15. Plaintiff prepared the income tax returns, corporate tax returns, and signed withholding statements and social security returns as secretary of the corporation.

16. On or about June 10, 1954 plaintiff loaned defendant corporation some $3,000 which was shown on the books of the corporation.

17. Plaintiff did not make earned surplus reports, profit and loss statements or balance sheet reports or other corporate financial reports after January 1, 1956, but kept his loan account current to the date of his discharge on April 11, 1958.

18. Plaintiff purchased a printing machine for the business at an approximate cost of $2,500 without consulting his wife Isabelle, president of the corporation.

19. After the marriage and until his discharge, plaintiff caused to be paid by corporate checks from the business a total amount of $6,600 covering the cost of food, utilities and incidentals for the

support of himself, his wife and child, and the upkeep of their dwelling house.

20. Plaintiff made salary payments to himself in amounts determined by himself and in amounts which varied according to his testimony depending on the profits of the business.

21. Isabelle Zygowski, as president of defendant corporation, advised the plaintiff not to engage in manual work or production work as such activities would violate the union contract.

22. Plaintiff permitted Isabelle Zygowski to have no access to the books of the corporaton during the period from 1956 to April 11, 1958 inclusive.

23. Plaintiff was not a member of the union, and was not either an apprentice or journeyman printer, and hence, ineligible under the union contract to do manual or production work on the printing presses of the company.

24. That on or about May 1, 1957, Walter Nowotny, attorney for Isabelle Zygowski, at a conference with her and the plaintiff requested the plaintiff to draw a weekly salary of $75 and the plaintiff refused in anger.

25. That about the time of the plaintiff's discharge on April 11, 1958, Isabelle Zygowski desired to remove the plaintiff's name from the persons authorized to draw checks.

26. That previous to said time, Isabelle Zygowski was in the habit of signing a number of checks in blank which plaintiff would fill in and complete as to payee and amount.

27. That plaintiff became incensed when he learned his power to sign checks was being discontinued, and plaintiff refused to surrender the corporate seal; that said corporate seal was in the safe of the corporation to which the plaintiff alone had access.

28. That it became necessary for Isabelle Zygowski to call the police to obtain the corporate seal for the resolution discontinuing the plaintiff's right to sign checks.

29. Plaintiff has received the sums of $1,800 for wages and $2,908.65, in repayment of a loan to the corporation at No. 418 May Term, 1958, a suit commenced within a week of this case.

30. That very soon after the marriage of plaintiff and Isabelle she conveyed to them as husband and wife her dwelling premises in Erie in which she had resided with her former husband and which she and her former husband had owned and which came to her upon his death together with another parcel of real estate in the City of Erie. No consideration passed from plaintiff to his wife in these conveyances.

31. That plaintiff after their marriage supported himself and the members of his family from earnings of the corporation throughout the period of his employment with the defendant corporation.

32. That corporate checks were used to pay doctor and hospital bills occasioned by the birth of a child to the plaintiff and his wife, the president of the defendant corporation.

33. That the plaintiff's authority in the management and conduct of the business was complete and unrestricted.

### Discussion.

This court has concluded from the evidence presented in this case that plaintiff's position was that of an employer under the statute rather than an employee as contended by his counsel. It is correct to say that at its inception plaintiff's relationship with defendant was that of an employee. But with the marriage the factual situation altered. After her first husband's death, Isabelle Zygowski held no corporate meetings, nor were any held during the time she was married to plaintiff. She installed herself as president and signed the checks as such which was her only corporate activity from the marriage onward. He signed the corporate checks as secretary but had not been elected to the office. It is a minor point as to whether plaintiff was a de jure officer of defendant but the evidence certainly shows that he was permitted to and did assume all the rights, privileges and prerogatives

of the owner of the business, that is to say, his wife. At first he acted for and on her behalf. Towards the end the evidence indicates that he acted as much for himself as for her. She had installed him as the managing director. He took to the position with alacrity. His wife very soon became voiceless in the management of the concern. She apparently accepted her status, as her only visits were weekly for the purpose of picking up the house money. The parties' expenses, that is the utilities and medical expenses were paid for by corporate checks on the business. The medical and hospital expenses in connection with the birth of their child were likewise paid by corporate checks. It is clear that from the marriage on, Isabelle Zygowski turned not only one-half of her real property over to plaintiff but put him in sole and full charge of the business. Trouble between the parties arose when in the exercise of tight fisted control over the business affairs, plaintiff commenced to exclude his wife from receiving any money from the business. She testified that he refused her even adequate house money. It is to be noticed that in the meantime he was operating the business successfully. It is also noticed that in the last two years plaintiff became careless in making proper book entries.

■ From my observation of the two people, it is apparent that plaintiff was the dominating personality. On the marriage Isabelle abdicated all functions with regard to the corporation except signing checks. Plaintiff was her alter ego in all business affairs. She made no assignment of any stock to him but it is not believed that such an act was necessary. It seems to this court from the marriage on, it was a one man corporation as that term is commonly used, and that the man concerned was the plaintiff and not Isabelle Zygowski.

■ In order for the plaintiff to recover in this case he must show by a fair preponderance of the evidence that he was an employee within the statutory meaning of that term and that he is entitled to the overtime compensation. This he has failed to do. It cannot be said that plaintiff's status with the defendant corporation was that of an employee in the light of the statutory definition of the term employer and the duties performed by the plaintiff.

Needless to say, a corporation can only act through someone. That someone in the instant civil action during the period of time involved here was the plaintiff and he alone. He was the sole person in the exercise of management functions. His function was performed not as an employee but as a representative of the proprietor, that is, his wife, who had given him full charge of the business. There do not seem to be any specific cases parallel to the factual situation presented before me but this court nevertheless has no doubt of plaintiff's status.

■ Under Section 203 *Definitions* (d), the employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee. As that term is understood by this court the employer here insofar as the general run of employees of the defendant is concerned was the corporation. But under the definition, the employer also includes any person acting directly or indirectly in the interest of such employer. That person during the period of time in question here is the plaintiff. This court finds under the evidence in this case that plaintiff during the two year period in which he claims compensation was the employer under the definition in the act and therefore not entitled to the benefits of the act insofar as his claim for overtime wages is concerned. He came clearly within the statutory definition of an employer under Section 203. See Mitchell, Sec. of Labor, v. L. W. Foster Sportswear Co., Inc., D.C., 149 F.Supp. 380.

Conclusions of Law.

1. This court has jurisdiction of the subject matter and of the parties to this action pursuant to the provisions of Section 16 of the Fair Labor Standards Act of 1938, as amended.

2. During the two year period prior to April 29, 1958 which was the date suit

was brought, plaintiff in his association with the defendant was an employer within the meaning of Section 203(d) of the Fair Labor Standards Act of 1938.

3. Plaintiff has not established by the evidence that he was an employee of the defendant during the two year period previous to April 29, 1958.

4. Plaintiff is not entitled to recover from defendant any minimum compensation under the Fair Labor Standards Act, nor any overtime compensation under the Act, for hours worked in excess of forty hours per week during the period which is at issue in this case.

5. That defendant is entitled to judgment in its favor.