Feliks ZYGOWSKI, Appellant,

v.

ERIE MORNING TELEGRAM, INC.
Doing Business as Journal Publishing Co.

No. 13616.

United States Court of Appeals
Third Circuit.

Argued Oct. 20, 1961.

Decided Jan. 12, 1962.

William W. Knox, Erie, Pa., for appellant.

Bernard F. Quinn, Erie, Pa. (Quinn, Leemhuis, Plate & Dwyer, Eaton & Nowotny, by Anthony M. Preston, Erie, Pa., on the brief), for appellee.

Before KALODNER, HASTIE and GANEY, Circuit Judges.

KALODNER, Circuit Judge.

Plaintiff, Feliks Zygowski, brought suit against defendant, Erie Morning Telegram, Inc., to recover minimum wages, overtime compensation, liquidated damages, and counsel fees under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.[1] The District Court, in a non-jury trial, held[2] that plaintiff was not an employee within the meaning of the Act and therefore not entitled to recover. Plaintiff appeals from the judgment entered in favor of defendant and from the subsequent denial of plaintiff's "Motion to Amend Findings of Fact and Conclusions of Law."

The period for which recovery is sought extends from April 29, 1956, until plaintiff's discharge on April 11, 1958. The two-year statute of limitations, 29 U.S.C.A. § 255, bars recovery for earlier employment, suit having been brought on April 29, 1958.

The facts, as found by the District Court and disclosed by the record, may be summarized as follows:

Defendant is engaged in the printing and publishing business in Erie, Pennsylvania.[3] In January, 1953, when plaintiff commenced his employment with defendant, Isabelle Wojciechowski was its sole stockholder and president. Plaintiff married Isabelle in May, 1954, and at about that time she called a meeting of all the employees, some five in number, and advised them that plaintiff was the "boss" and would run the company. Thereafter, plaintiff was in complete charge of the

---

1. Jurisdiction exists under 29 U.S.C.A. § 216(b) and 28 U.S.C. § 1337.

2. The Opinion of the District Court is reported at 190 F.Supp. 210 (W.D.Pa. 1960).

3. At trial defendant admitted that it is engaged in interstate commerce and the production of goods for interstate commerce.

business. His authority in the management and conduct of defendant was unrestricted. He hired and discharged employees, kept all the books, handled the office work, supervised all operations, and prepared and filed corporate tax returns.

Defendant's directors did not meet during the years 1953 to 1958 inclusive. Isabelle, in addition to being president of defendant, was also its vice-president and treasurer. One Charles Pickens was the elected secretary, but plaintiff, nevertheless, signed as secretary on defendant's checks and on City of Erie withholding statements which it filed.

The signatures of both plaintiff and Isabelle were required on defendant's checks. She would usually sign a number of blank checks and leave them with plaintiff to be completed and issued by him as needed.

The trial judge found that "plaintiff made salary payments to himself in amounts determined by himself and in amounts which varied according to his testimony depending on the profits of the business." During the period of approximately two years for which recovery is sought in this suit, these payments totalled $2,765.83 and were made at irregular intervals in sums varying in amount from one dollar to two thousand dollars.

After plaintiff's marriage to Isabelle in May, 1954, he used defendant's funds to pay doctor and hospital bills, household expenses, and other items for the support of his family. From March 24, 1956, until his discharge, these expenditures totalled approximately $6,600.[4] None of this amount was recorded on defendant's books as wage payments to plaintiff.

Plaintiff denied Isabelle access to defendant's books from 1956 until his discharge. Just prior to that event Isabelle desired to pass a corporate resolution discontinuing his authority to sign checks. Plaintiff became incensed upon learning of this, and he refused to surrender the corporate seal, which Isabelle needed in order to pass the resolution. She found it necessary to call in the police to obtain the seal.

The District Court, in its opinion, 190 F.Supp. 210, made this graphic summation of the situation at pages 212–213:

" * * * The evidence certainly shows that [plaintiff] was permitted to and did assume all the rights, privileges and prerogatives of the owner of the business, that is to say, his wife. At first he acted for and on her behalf. Towards the end the evidence indicates that he acted as much for himself as for her. She had installed him as the managing director. He took to the position with alacrity. His wife very soon became voiceless in the management of the concern. She apparently accepted her status, as her only visits were weekly for the purpose of picking up the house money. * * * It is clear that from the marriage on, Isabelle Zygowski * * * put him in sole and full charge of the business. Trouble between the parties arose when in the exercise of tight fisted control over the business affairs, plaintiff commenced to exclude his wife from receiving any money from the business. She testified that he refused her even adequate house money. * * * From my observation of the two people, it is apparent that plaintiff was the dominating personality. On the marriage Isabelle abdicated all functions with regard to the corporation except signing checks. Plaintiff was her alter ego in all business affairs. She made no assignment of any stock to him but it is not believed that such an act was necessary. It seems to this court from the marriage on, it was a one man corporation as that term is commonly used, and that the man concerned was the plaintiff and not Isabelle Zygowski."

---

**4.** The District Court found that the $6600 sum covered the entire period from plaintiff's marriage until his discharge. The record, however, reveals that this sum was spent subsequent to March 24, 1956.

It was in the light of the foregoing that the District Court, as earlier stated, held that plaintiff was not an employee within the meaning of the Act. The record affords ample basis for the District Court's holding.

In order to recover, plaintiff must be an "employee" within the meaning of the Act, and defendant must be an "employer". 29 U.S.C.A. §§ 206, 207, 216; Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). The Act defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." "Employee" is defined as including "any individual employed by an employer." "Employ" is defined as including "to suffer or permit to work." 29 U.S.C.A. § 203. These are broad definitions that do not provide a ready-made answer in every case as to whether a particular type of relationship constitutes that of employer-employee.

In Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) the Supreme Court in pointing out that "there is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the Act" (p. 728, 67 S.Ct. p. 1475), held that "the determination of the relationship does not depend" on "isolated factors but rather upon the circumstances of the whole activity" (p. 730, 67 S.Ct. p. 1477).

In Goldberg v. Whitaker House Cooperative, Inc., supra, 366 U.S. it was said (p. 33, 81 S.Ct. p.):

"In short, if the 'economic reality' rather than 'technical concepts' is to be the test of employment (United States v. Silk, 331 U.S. 704, 713 [67 S.Ct. 1463, 1468, 91 L.Ed. 1757]; Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 [67 S.Ct. 1473, 1476, 91 L.Ed. 1772]); these homeworkers are employees."

In the instant case, the extraordinary and peculiar "circumstances of the whole activity" of plaintiff, and the "economic reality" of the prevailing situation support the District Court's holding that plaintiff was an "employer" and not an "employee" within the meaning of the Act.

For the reasons stated the judgment of the District Court will be affirmed.